UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD GENTILE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-673 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| COUNTY OF DUPAGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Gerald Gentile worked as a Weatherization Program Assessor for DuPage County for 15 years. He basically helped residents make their homes more energy efficient. When the COVID-19 pandemic hit, Gentile – like millions of people worldwide – started teleworking. So instead of going to other people's homes, Gentile stayed home.

After a few months of telework, DuPage County told Gentile that he needed to return to the office and go back into the field. But Gentile worried about the risks of catching COVID-19. He had reason to be concerned: he was immunocompromised from a pulmonary embolism lung dysfunction. At that point in mid-2020, there was no vaccine.

After consulting with his doctor, Gentile asked to continue teleworking. But DuPage County refused. He also asked to take leave, but the County rejected that request, too. After some back and forth, things quickly deteriorated. Instead of accommodating his requests, DuPage County abruptly fired him.

Gentile responded by suing DuPage County under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and Illinois common law. The claims involve the denial of his requests for telework and for leave, and his ensuing termination.

DuPage County moved to dismiss for failure to state a claim. For the reasons stated below, the motion is granted in part and denied in part.

## Background

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In 2004, Gerald Gentile started working for DuPage County's Community Services Department as a Weatherization Program Assessor. *See* Cplt., at ¶¶ 6–7 (Dckt. No. 1). As the name suggests, Weatherization Program Assessors help low-income households reduce energy costs by making their residences more energy efficient. *See Home Weatherization*, Illinois Dep't of Commerce, https://www2.illinois.gov/dceo/CommunityServices/HomeWeatherization/Pages/default.aspx (last visited February 3, 2022).

Assessors perform on-site inspections at individual residences, and complete office work at the County's facility in Wheaton. *See* Cplt. at ¶ 10 (Dckt. No. 1). On-site inspections typically last two to four hours and involve interacting with residents and performing tests. *Id.* at ¶ 11. Some tests, like blower door tests, circulate dust from the residence in the air. *Id.* at ¶ 12.

In May 2019, Gentile had a pulmonary embolism. *Id.* at ¶ 4. That's a blood clot that gets stuck in the lungs, and blocks blood flow. Gentile's embolism caused a life-long lung dysfunction that affects his ability to breathe and engage in strenuous physical activity. *Id.* It also leaves him immunocompromised. *Id.*

In March 2020, Gentile – like untold millions of workers worldwide – had normal life turned upside down by COVID-19 pandemic. On March 13, 2020, Gentile's supervisor, David Watkins, told Gentile and his co-workers that they needed to start working remotely. *Id.* at ¶ 14. So Gentile teleworked from March to July 2020. *Id.* at ¶¶ 15, 17. During that period of telework, Gentile performed all of the essential functions of his job. *Id.* at ¶ 16.

After a few months of telework, the directives from the County changed. In late May or early June, DuPage County told Gentile to report back to the office and resume on-site inspections by July 6, 2020. *Id.* at ¶¶ 17, 20. The complaint does not reveal whether DuPage County delivered the same message to everyone, or whether Gentile was singled out.

That revelation was unwelcome news to Gentile, who worried about contracting COVID-19 at work. He visited his primary care physician, Dr. Patrick Mackey, for a COVID-19 risk consultation. *Id.* at ¶ 18. Dr. Mackey informed Gentile that he was at a substantial risk of serious injury or death if he contracted COVID-19. The physician advised Gentile that he should not perform on-site residential inspections due to his exposure risk. *Id.* at ¶ 19. Dr. Mackey wrote a letter expressing his medical views, and gave it to Gentile. *Id.* at ¶ 20.

On June 8, 2020, Gentile emailed Watkins and asked to continue teleworking due to his lung dysfunction. *Id.* at ¶ 22. He attached Dr. Mackey's letter. *Id.* Pamela Andrew, a DuPage County Human Resources representative, followed up with Gentile on his email, asking that he confirm his request for an accommodation. *Id.* at ¶ 23.

Gentile submitted a written confirmation on June 18, requesting to telework without field exposure. *Id.* at ¶ 24. Andrew did some due diligence, contacting Dr. Mackey's office and requesting medical paperwork to support the request. *Id.* at ¶ 25. Dr. Mackey faxed the paperwork on June 26. *Id.* at ¶ 26.

It wasn't enough for the County. A few hours after Dr. Mackey's fax, Margaret Ewing (DuPage County's Director of Human Resources) called Gentile and denied his request. *Id.* at ¶ 27. Ewing told Gentile that field work was an essential function of his position and that he couldn't telework. *Id.*

Gentile thought that Ewing was hostile on the phone. Shortly after, he contacted the DuPage County Board about the denial of his request for an accommodation, as well as Ewing's "uncivil behavior on the phone call." *Id.* at ¶ 28. Two board members, James Zay and Peter DiCanni, told Gentile that they would investigate. *Id.* at ¶ 29.

With telework coming to an end, Gentile requested to take vacation leave from July 6 to July 10, 2020. *Id.* at ¶ 31. Watkins approved the request. *Id.*

While Gentile was on vacation, Ewing sent Gentile a written denial of his accommodation request. *Id.* at ¶ 32. The denial stated that he may be eligible for a leave of absence. *Id.*

Gentile started using sick leave on July 13, 2020, and Dr. Mackey submitted FMLA paperwork to DuPage County for Gentile. *Id.* at ¶ 33. But a week later, Ewing denied Gentile's FMLA leave request without comment. *Id.* at ¶ 34.

On July 24, 2020, Gentile filed a complaint with the Office of the DuPage County Auditor claiming that the County (and Ewing) had failed to consider his teleworking request, alleging violations of the ADA and the FMLA. *Id.* at ¶ 35.

The County dug in. On July 27, David McDermitt (Watkins's supervisor) emailed Gentile that he had to return to work on July 28, 2020. *Id.* at ¶ 36. Gentile responded later that day, asking to telework as an accommodation because of his lung dysfunction. *Id.* at ¶ 37.

With Gentile and DuPage County at an impasse, DuPage County sent Gentile a letter titled "Personnel Action – Confirmation of Resignation" on July 28, 2020. *Id.* at ¶ 38. The letter was dated July 27, 2020, and it falsely stated that Gentile had voluntarily resigned. *Id.*

The County basically told Gentile that he couldn't telework, and then showed him the door. But after he left, the County took a more flexible approach with other employees. According to the complaint, Watkins and Gentile's former co-workers "were again assigned telework only." *Id.* at ¶ 45. The complaint does not reveal if they had comparable jobs, or whether they needed to go to the homes of residents to do their jobs.

In August 2020, Gentile filed a disability discrimination charge with the EEOC. *Id.* at ¶ 48. On January 7, 2021, he received a Notice of Right to Sue. *Id.* at ¶ 49.

One month later, Gentile filed this lawsuit, advancing eight claims against DuPage County. *See* Cplt. (Dckt. No. 1). After the County moved to dismiss, Gentile voluntarily dropped four of the eight claims (specifically, Counts IV, V, VII, and VIII). So they are dismissed, and four claims are left. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 2, 14 (Dckt. No. 10).

Count I is a claim under the ADA, 42 U.S.C. § 12101, *et seq.*, alleging disability discrimination and a failure to accommodate Gentile's lung dysfunction. *Id.* at Count I ¶¶ 48–61.[1]

Counts II and III are claims under the FMLA, 29 U.S.C. § 2601, *et seq*. Count II alleges that DuPage County wrongfully interfered with his right to take leave when it denied his request and terminated him. *Id.* at Count II ¶¶ 48–56. Count III alleges that DuPage County retaliated

---

[1] Gentile restarts his numbering multiple times in the complaint. Paragraph 48 shows up in Count I, Count II, and Count IV. So, for clarity, the Count number will appear before each paragraph throughout.

against Gentile for pushing back when the County denied his request for FMLA leave. *Id.* at Count III ¶¶ 57–60.

The last remaining claim, Count VI, alleges that DuPage County retaliatorily discharged Gentile for a protected refusal to perform on-site work. *Id.* at Count VI ¶¶ 58–64.

DuPage County responded with a motion to dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## Discussion

Gentile brings claims under two statutes, the ADA and the FMLA, plus a claim under Illinois common law. The Court will take them up in that order.

I.   The Americans with Disabilities Act

Gentile's first claim is that DuPage County failed to accommodate his lung dysfunction. *See* Cplt., at Count I ¶¶ 48–61 (Dckt. No. 1). He alleges that he requested a reasonable accommodation to telework, but that the County improperly denied the request without engaging in the interactive process required by statute.

Before diving in, there is a threshold question of what, exactly, Gentile is alleging. It is not entirely clear whether Gentile is alleging a failure to accommodate claim (only), or is alleging both a failure to accommodate claim and a disparate treatment claim. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (explaining that ADA discrimination can take the form of disparate treatment or a failure to accommodate). Failure to accommodate claims are about whether employers provided reasonable accommodations for employees, and disparate treatment claims are about adverse employment actions. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006).

Parts of the complaint suggest that Gentile is alleging both. For example, the title of Count I is "DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA." *See* Cplt., at 7 (Dckt. No. 1). DuPage County seems to straddle both theories – it initially frames the claim as a failure to accommodate claim, but uses some of the disparate treatment framework. *See* Def.'s Mtn. to Dismiss, at 5 (Dckt. No. 8). Gentile responds that the disparate treatment framework is unnecessary, and he frames his ADA claim as a failure to accommodate claim. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 2 (Dckt. No. 10). And Gentile analyzes his claim under the failure to accommodate framework. *Id.*

A plaintiff is the master of the complaint. So this Court will follow Gentile's lead, and will read Count I to allege only a failure to accommodate claim. *See Timmons*, 469 F.3d at

7

1125–26 (finding that when a plaintiff framed an ADA claim as a disparate treatment claim and analyzed it under that framework, they waived any failure to accommodate claim despite the case having elements of both types of claims). This Court grants Gentile leave to amend if he intended to allege a disparate impact claim as well. An amended complaint (if any) is due within two weeks of this decision.

With that windup, the Court turns to the substance of the statute. The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability." *See* 42 U.S.C. § 12112(a). Failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that the accommodation would impose an "undue hardship." *See* 42 U.S.C. § 12112(b)(5)(A); *see also Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018).

To state a failure to accommodate claim, Gentile must allege that (1) he is a qualified individual with a disability; (2) DuPage County was aware of the disability; and (3) DuPage County failed to reasonably accommodate his disability. *See Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)).

The parties do not dispute that Gentile sufficiently alleged that he had a disability, and that DuPage County knew about it. Instead, the parties disagree over whether Gentile could perform the essential functions of his job, and thus was a "qualified individual."

The ADA defines the term "qualified individual" to mean "an individual who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." *See* 42 U.S.C. § 12111(8) (emphasis added); *see*

8

*also Brumfield*, 735 F.3d at 631. A "worker has no claim under the ADA if she, even with a reasonable accommodation, cannot do the job for which she was hired." *DePaoli v. Abbott Lab'ys.*, 140 F.3d 668, 674 (7th Cir. 1998) (citing *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir. 1997)).

DuPage County argues that Gentile has not sufficiently alleged that he could perform the essential functions of his job – namely on-site inspections and office attendance – with or without a reasonable accommodation. *See* Def.'s Mtn. to Dismiss, at 8–9 (Dckt. No. 8). The County contends that Gentile admits that on-site inspections and office attendance are essential functions, and that Gentile cannot perform these functions while teleworking. *Id.*

The County's argument is tough sledding. Gentile alleges that before the COVID-19 pandemic, he could "perform all essential functions of his job." *See* Cplt., at ¶ 10 (Dckt. No. 1). He also claims that he "continued to perform all essential functions of his job" while teleworking. *Id.* at ¶ 16. Gentile alleges that at *all* times he could "perform the essential functions of his position with reasonable accommodations." *Id.* at ¶¶ 39, 55.

Gentile squarely alleges that he could perform all essential functions of his job while teleworking. *Id.* at ¶¶ 10, 16, 39, 55. That allegation may or may not pan out, but this Court must accept it as true at the motion-to-dismiss stage. *See Lett*, 946 F.3d at 399.

DuPage County points to allegations in the complaint that, in its view, call into question whether Gentile could do his job while teleworking. The County draws attention to the allegation that, before the pandemic, Gentile "performed some on-site inspections, as well as [] office work." *See* Cplt., at ¶ 10 (Dckt. No. 1). Another passage alleged that the County

9

informed him that he "would be required to report to [DuPage County's] office and perform on-site inspections." *Id.* at ¶ 17. Another passage recounted the *County's* view that "his essential functions of his position required him to work in the field." *Id.* at ¶ 27.

The County views those passages as admissions that on-site inspections are essential. Elsewhere, Gentile alleges that he "could not perform the on-site inspections." *Id.* at ¶ 37. If on-site inspections are essential, and if Gentile couldn't perform on-site inspections, then Gentile could not perform the essential functions of his job.

That argument overstates the allegations of the complaint. Gentile alleged that on-site inspections were part of the job. But he didn't allege that on-site inspections were an *essential* part of the job, with no possible work-around. In fact, he did the opposite. He alleged that he teleworked for several months, from March to July 2020. *Id.* at ¶¶ 15, 21. He performed "all essential functions of his job" during that stretch of time. *Id.* at ¶ 16.

Gentile also alleged that the County let other employees telework after his termination. *Id.* at ¶ 45. It is difficult to know what, exactly, to make of that allegation. Maybe the co-workers had comparable jobs, and maybe they didn't. But at the motion to dismiss stage, the Court must read the complaint in Plaintiff's favor. Gentile presumably included an allegation about his co-workers because they were similarly situated.

The case might look different after the parties gather the facts. Maybe on-site inspections were an essential part of the job, even though Gentile teleworked without doing on-site inspections for several months. But it will turn on the facts. *See Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016) ("The essential function inquiry is a factual question."). The parties can gather them in discovery. At this point, the question is simply whether the complaint alleges enough to get to the next phase of the case. It does.

The County makes a few other arguments, but they do not move the needle.

At times, the County suggests that it is entitled to define the essential job responsibilities of its employees. Needless to say, employers play a big role in defining what is essential. The statute itself acknowledges that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job." *See* 42 U.S.C. § 12111(8).

But notice the word choice. The employer's view is entitled to "consideration," not dispositive weight. *Id.* When it comes to defining essential job responsibilities, it is not "my way or the highway." Picking up on the text, the Seventh Circuit has "cautioned that although 'the employer's judgment is an important factor, . . . it is not controlling.'" *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 570 (7th Cir. 2019) (quoting *Miller*, 643 F.3d at 198). "The ADA does not give employers unfettered discretion to decide what is reasonable." *Miller*, 643 F.3d at 199.

Next, the County points out that they offered Gentile a reasonable accommodation, in the form of personal protective equipment ("PPE"). *See* Def.'s Mtn. to Dismiss, at 4–5 (Dckt. No. 8). But the complaint alleges that the PPE was inadequate to remove the serious risk of contracting COVID-19. *See* Cplt., at ¶ 13 (Dckt. No. 1). The Court must accept that allegation at this stage.

Finally, the County argues that it had no discriminatory animus. *See* Def.'s Mtn. to Dismiss, at 7 (Dckt. No. 8). But a discriminatory animus is not a factor in a reasonable accommodation claim. *See Brumfield*, 735 F.3d at 631.

The motion to dismiss the ADA claim is hereby denied.

11

## II.     The Family and Medical Leave Act

Gentile's second and third claims fall under the FMLA.  He brings an interference claim, and a retaliation claim.  Gentile alleges that DuPage County interfered with his right to take FMLA leave and retaliated against him for trying to take leave.  *See* Cplt., at Count II  ¶¶ 48–56, Count III ¶¶ 57–60 (Dckt. No. 1).

"The FMLA entitles an eligible employee to take up to twelve workweeks of leave when the employee has a serious health condition that renders him unable to perform his position." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020) (citing 29 U.S.C. § 2612(a)).  The FMLA makes it unlawful to interfere with an employee's attempt to exercise FMLA rights and forbids employers from retaliating against an employee who exercises FMLA rights.  *See* 29 U.S.C. § 2615(a)(1)–(2), (b).

To state an interference claim, a plaintiff must allege sufficient facts showing that:  "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied or interfered with FMLA benefits to which he was entitled." *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (cleaned up).

To state a retaliation claim, a plaintiff must allege that:  "(1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012).

A party can bring an FMLA claim only if he or she was entitled to take FMLA leave. DuPage County moves to dismiss on that ground, arguing that Gentile wasn't qualified for FMLA leave.  *See* Def.'s Mtn. to Dismiss, at 10 (Dckt. No. 8).

To qualify for FMLA leave, a plaintiff must have suffered a "serious health condition." *See* 29 U.S.C. § 2612(a). A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves inpatient care or continuing treatment by a health care provider. *See* 29 U.S.C. § 2611(11).

For present purposes, the key phrase is "continuing treatment." *Id.* Federal regulations define what qualifies as "continuing treatment" under the statute. *See* 29 C.F.R. § 825.115. As relevant here, continuing treatment includes chronic conditions and permanent conditions:

> (c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
>> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>>
>> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>>
>> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).
>
> \*   \*   \*
>
> (d) Permanent or long-term conditions. A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.
>
> \*   \*   \*
>
> (f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count

13

>exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

*See* 29 C.F.R. § 825.115.

Here, Gentile alleges that he received "continuing treatment" from Dr. Mackey. *See* Cplt., at ¶ 50 (Dckt. No. 1). The complaint itself does not put much flesh on the bones when it comes to that allegation. The complaint does not describe the continuing treatment in any level of detail.

Still, Gentile does allege that he suffered a pulmonary embolism, which is serious business. *Id.* at ¶¶ 1, 4, 8. He alleges that he suffers from a "lung disability." *Id.* at ¶¶ 1, 9, 18. And he alleges that he had at least one visit with his doctor in 2020. *Id.* at ¶¶ 18–19.

Overall, the complaint alleges that Gentile suffered from a serious lung condition. At this stage, it is a fair inference that Gentile received continuing care for his lung disability. Again, the facts might paint a different picture, but the only picture at this point is the snapshot in the complaint. And the complaint alleges enough to state a claim that Gentile qualified for leave under the FMLA.

The motion to dismiss the FMLA claims is hereby denied.

### III. Illinois Common Law

Gentile's final claim is a retaliatory discharge claim under Illinois common law for "refusing work that may subject [him] or the public to serious injury or death." *Id.* at Count VI ¶ 58.

DuPage County argues for dismissal because the claim depends on COVID-19 Executive Order 30, and Executive Order 30 does not create a cause of action. *See* Def.'s Mtn. to Dismiss, at 13 (Dckt. No. 8). Gentile responds that his protected refusal was not based on Executive Order 30, "but rather on the public policy, 'favoring the effective protection of the lives and

14

property of citizens.'" *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 14 (Dckt. No. 10) (citing *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 92 Ill. Dec. 561, 485 N.E.2d 372, 377 (1985)).

Under Illinois law, an employee can bring a retaliatory discharge claim in two situations: (1) when an employee is discharged for asserting a workers' compensation claim; or (2) when an employee is fired for refusing to engage in illegal conduct or reporting illegal conduct of others ("whistle blowing" or "citizen crime fighting"). *See Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 235 Ill. Dec. 936, 706 N.E.2d 491, 493 (1998); *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 941 (7th Cir. 2002).[2]

This case does not fit within those boundaries. The complaint does not allege anything about workers' compensation, or whistleblowing. The complaint does not allege that DuPage County fired Gentile for refusing to engage in illegal conduct, either.

DuPage County's motion to dismiss Count VI is granted.

## Conclusion

DuPage County's motion to dismiss is granted in part and denied in part. The Court denies DuPage County's motion to dismiss Count I (ADA), Count II (FMLA interference), and

---

[2] Decades ago, the Illinois Supreme Court recognized a claim for retaliatory discharge based on the policy of protecting "the lives and property of citizens from the hazards of radioactive material." *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 92 Ill. Dec. 561, 485 N.E.2d 372, 377 (1985). That holding appears to be narrow, meaning that it was limited to radioactive material. Later cases from the Illinois Supreme Court do not cite *Wheeler* when describing the boundaries of a retaliatory discharge claim under Illinois common law. The key point is that the Illinois Supreme Court has not recognized a wide-ranging claim for anything having to do with public health and safety. This Court declines the invitation to do what the Illinois Supreme Court has declined to do in the intervening three decades and extend *Wheeler* to other claims about health and safety.

15

Count III (FMLA retaliation). The Court grants the motion to dismiss Count VI (Illinois common law).

Date: February 4, 2022

                                                             _____
                                                             Steven C. Seeger
                                                             United States District Judge